UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALENTIN B.,

          Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

**DECISION AND ORDER**

1:21-CV-00245 EAW

## INTRODUCTION

Represented by counsel, plaintiff Valentin B. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. 8; Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff filed his application for SSI on October 12, 2018. (Dkt. 6 at 16, 79).[1] In his application, Plaintiff alleged disability beginning November 25, 2003. (*Id.* at 16, 82, 163). Plaintiff's application was initially denied on March 4, 2019 (*id*. at 16, 70-79, 92), and denied upon reconsideration on May 22, 2019 (*id.* at 100-110). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Moises Penalver on May 12, 2020. (*Id.* at 34-69). On June 25, 2020, the ALJ issued an unfavorable decision. (*Id.* at 13-29). Plaintiff requested Appeals Council review, and his request was denied on December 15, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

**DISCUSSION**

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 12, 2018, the application date. (Dkt. 6 at 18).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of cervical spondylosis, lumbosacral degenerative disc disease with sciatica, left shoulder derangement, history of left knee derangement, bipolar disorder, anxiety disorder, and cannabis use disorder. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of alcohol/ethanol dependence, right knee pain, right shoulder pain, and headaches were non-severe. (*Id*. at 19).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (*Id*. at 19-20).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations:

> [Plaintiff] can lift or carry up to 20 pounds occasionally and 10 pounds frequently, and can sit up to six hours in an eight-hour workday. However, [Plaintiff] can only stand or walk for five hours total in a workday, and can only operate left foot controls occasionally. He can never climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs. He can occasionally stoop, crouch, kneel, and crawl, and can reach overhead with the left arm occasionally. [Plaintiff] is limited to simple, routine tasks, and is limited to low stress jobs, defined as positions with no more than occasional changes in the work setting. He cannot tolerate fast-paced work environments, defined as constant activity with work tasks performed sequentially in rapid succession. He is limited to occasional brief and superficial contact with the public, and can tolerate no more than occasional interaction with co-workers, but can tolerate up to frequent interaction with supervisors. Finally, [Plaintiff] requires breaks every hour lasting one to two minutes, in addition to regularly scheduled breaks.

(Dkt. 6 at 21-22).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 27).  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of: inspector, hand packager; assembler, small products; and final assembler.  (*Id.* at 28).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 28-29).

## II. The ALJ's Decision is Supported by Substantial Evidence and Free From Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that: (1) in assessing specific limitations in the RFC, the ALJ's determination was based on his lay interpretation of medical evidence and was not based on substantial evidence; and (2) the ALJ did not properly address Plaintiff's difficulties handling stress.  (Dkt. 8-1 at 1).  The Court is not persuaded by these arguments for the reasons discussed below.

### A. The Specific Findings in the RFC are Supported by Substantial Evidence

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.*  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y.

2018) (quotation omitted).

> In other words: An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

However, an ALJ does not commit reversible error where he gives a claimant the benefit of the doubt and assesses limitations more severe than those supported by the medical evidence of record based on the claimant's subjective complaints. *See, e.g., Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184, at *5 (W.D.N.Y. Sept. 28, 2021) ("[This] is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony. This does not constitute reversible error."); *Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

Plaintiff challenges the specificity of the ALJ's RFC determination on three grounds. First, Plaintiff argues that the ALJ's determination that Plaintiff could frequently interact with supervisors but could only interact occasionally with coworkers and the public constitutes the ALJ's lay opinion, and the limitation is not supported by substantial evidence. (Dkt. 8-1 at 14-15). Second, Plaintiff argues that the ALJ's determination that Plaintiff is occasionally limited in reaching overhead with his left hand without any other findings regarding reaching limitations did not rely upon the medical opinion of consultative examiner ("CE") Dr. Hongbiao Liu, M.D. and is arbitrary. (*Id.* at 15-16). Third, Plaintiff argues that the ALJ did not specify in the RFC the time or nature of the breaks Plaintiff would require as a result of his migraine headaches. (*Id.* at 16-17). The Court considers each of these arguments below.

As to Plaintiff's social limitations, Plaintiff contends that, despite the opinion of CE Dr. Stephen Farmer, Psy. D. that Plaintiff had a "mild to moderate limitation interacting adequately with supervisors, coworkers, and the public" (Dkt. 6 at 338), which does not differentiate among these groups, the ALJ substituted his own lay opinion by differentiating Plaintiff's ability to interact among these groups in the RFC (Dkt. 8-1 at 14-15). Defendant argues that the RFC is consistent with Dr. Farmer's[2] assessment that Plaintiff had moderate limitations interacting with supervisors, coworkers, and the public and is appropriately supported by other evidence including mental status findings in determining Plaintiff's RFC. (Dkt. 9-1 at 11-16).

---

[2]   Defendant refers to the author of this assessment as "Dr. Brownfeld." (Dkt 9-1 at 13-14). However, Defendant cites to the evaluation authored by Dr. Farmer. (*See id.*).

The Court finds persuasive Defendant's argument that the RFC was supported in part by Dr. Farmer's opinion and further finds that the ALJ's RFC determination, which afforded Plaintiff greater limitations than those enumerated in relevant medical opinions, was consistent with record evidence concerning Plaintiff's ability to interact with the public and in group settings.

With regard to the differing limitations as to Plaintiff's ability to interact with supervisors, co-workers and the public, set forth in the RFC, the ALJ primarily relied on Dr. Farmer's opinion that Plaintiff possessed a "mild to moderate limitation in interacting adequately" with them. (Dkt. 6 at 26 (citing *id.* at 338)). The ALJ also noted that Plaintiff had previously "reported depression and anxiety with situational stressors." (*Id.* at 25). During the hearing, Plaintiff's counsel asked Plaintiff, "How would you describe your ability to interact and relate with others?" (*Id.* at 56). Plaintiff testified that his ability to interact with others was "awful" and that he "tri[ed] his best to say no" to situations in which he may be required to interact with others. (*Id.*). Plaintiff further testified that group settings had previously caused feelings of paranoia, which led Plaintiff to be seen—presumably for mental health treatment—in one-on-one settings. (*See id.*). In addition to the limitations that Dr. Farmer described, the ALJ "noted further restrictions in the residual functional capacity above after viewing the record in the light most favorable to the claimant." (*Id.* at 27). Thus, the ALJ credited Plaintiff's testimony regarding his limitations in situations requiring interaction with multiple individuals and afforded him more generous limitations regarding his ability to interact with the public and with coworkers consistent with that testimony. This was not reversible error.

Plaintiff next challenges the ALJ's assessment that Plaintiff is able to reach overhead occasionally with the left hand but has no limitations on his reaching ability in any other direction. (Dkt. 8-1 at 15-16). Plaintiff contends that the ALJ's assessment is arbitrary because the limitation assessed is more restrictive than called for by Dr. Liu's medical opinion. (*Id.* at 16). Defendant argues that it is Plaintiff's burden to show that his limitations exceed the RFC and preclude his ability to perform substantial gainful activity, and he has not done so. (Dkt. 9-1 at 17). The Court finds, for the reasons that follow, that the reaching limitation in the RFC is supported by substantial evidence.

On January 22, 2019, Plaintiff underwent a consultative examination by Dr. Liu. (Dkt. 6 at 340-44). Relevant to the reaching limitation that Plaintiff challenges, Dr. Liu noted that Plaintiff "could lift 30 lb with left hand" (Dkt. 6 at 341) and Plaintiff possessed "full [range of motion] of shoulders[,] (*id.* at 343). Dr. Liu did not assess a reaching limitation. (Dkt. 8-1 at 16; *see* Dkt. 6 at 340-44). However, during the administrative hearing before the ALJ, Plaintiff testified that he had previously suffered an injury to his left arm. (Dkt. 6 at 51). Plaintiff testified that, as a result of the injury, he "can't . . . raise [his left arm] over his head" and he "can't reach [his left arm] out too straight. . . ." (*Id.*). Partially crediting Plaintiff's testimony, the ALJ determined in the RFC that Plaintiff "can reach overhead with the left arm occasionally." (*Id.* at 21).

Although Plaintiff contends that the ALJ's assessment of the overhead reaching limitation is unsupported by competent medical evidence (Dkt. 8-1 at 11, 16), as discussed above, an ALJ does not commit reversible error where he assess more stringent limitations than are found in the medical opinions of record based on the claimant's subjective

complaints, *see, e.g.*, *Lynneesa M.*, 2021 WL 4437184, at *5; *Lesanti* 436 F. Supp. 3d at 649. Here, the ALJ was not purporting to adopt a medical examiner's opinion based on his own lay interpretation. Instead, he permissibly partially credited Plaintiff's subjective complaints and accordingly included in the RFC finding a limitation that was not identified by the medical opinions of record. This does not entitle Plaintiff to a reversal of the Commissioner's determination. *See Mary Diane K. v. Comm'r of Soc. Sec.*, 541 F. Supp. 3d 270, 277 (W.D.N.Y. 2021) ("Here, the ALJ explained that she was affording Plaintiff the benefit of the doubt and crediting her statement that her symptoms increased with use of her hands, as well as taking into account her testimony regarding her cervical spine impairments. . . . This is simply not a basis for reversal."); *Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion. But this does not constitute reversible error."). Thus, the overheard reaching limitation assessed in the RFC is not a basis for remand.

To the extent that the ALJ did not assess a reaching limitation based on Plaintiff's testimony that he "can't reach [his left arm] out too straight," the Court cannot conclude that the ALJ's resolution of the conflicting aspects of the record was outside his discretion. (Dkt. 6 at 51); *see Mary Diane K.*, 541 F. Supp. 3d at 276 ("It was further not erroneous for the ALJ to partially credit Plaintiff's testimony regarding her own limitations and assess more restrictive manipulative and environmental limitations than those identified by the consultative examiners."). An ALJ is "not required to accept [a claimant's] subjective

complaints without question" and has the discretion to find a claimant only partially credible. *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). Here, the ALJ found that Plaintiff's statements regarding his limitations were not entirely consistent with the other evidence of record (Dkt. 6 at 26), and explained the reasons for that determination. Accordingly, the Court finds no reversible error in the ALJ's decision to only partially credit Plaintiff's statements regarding his ability to use his left arm.

Plaintiff next argues that the ALJ's assessment of one- to two-minute breaks per hour in addition to his scheduled break to address his migraine headaches is arbitrary, does not account for the proper length of a break needed to address Plaintiff's migraines, and that the ALJ's opinion fails to indicate that such breaks should be unscheduled, warranting remand. (Dkt 8-1 at 17). However, Plaintiff's argument is based on a misreading of the ALJ's opinion. An examination of the ALJ's opinion and the evidence of record demonstrates that the one- to two-minute breaks assessed in the RFC are not for the purpose of addressing Plaintiff's migraine headaches. Rather, the additional breaks assessed in the RFC are consistent with Plaintiff's testimony regarding difficulty focusing as a result of his anxiety. (*See* Dkt. 6 at 20). This limitation is supported by substantial evidence and is not a basis for remand.

Although Plaintiff argues that the hourly breaks "lasting one to two minutes" assessed in the RFC are for the purpose of managing Plaintiff's migraine headaches (Dkt. 8-1 at 16-17), such a determination is not consistent with the ALJ's determination that Plaintiff's "migraine headaches are not consistently reported in the record, as to cause any

regular scheduled interruptions, as alleged[,]" (*id.* at 27). In other words, although Dr. Liu opined that Plaintiff "may experience interrupted scheduled activities due to the migraine headaches" (*id.* at 344), the ALJ expressly rejected that finding (*id*. at 27). He did not, as Plaintiff argues, attempt to incorporate that opinion into the RFC determination by including the limitation for additional one- to two-minute breaks.

By contrast, Dr. Farmer noted that Plaintiff's "anxiety-related symptomology is remarkable" and involved "excessive apprehension and worry and difficulty concentrating." (*Id.* at 336-37). Similarly, Plaintiff's "cognitive symptoms and deficits are remarkable" and include "concentration difficulties." (*Id.* at 337). The ALJ credited Dr. Farmer's report, which noted "evidence of mild limitation sustaining an ordinary routine. . . ." (*Id.* at 26; *see also id.* at 338). The ALJ further determined that "the record supported no more that mild restrictions in this area" and explained that "the residual functional capacity reflects breaks for one to two minutes hourly, in addition to regularly schedule breaks," to accommodate Plaintiff's issues with concentration, persistence, and pace. (*Id.* at 20). Plaintiff does not challenge the extent to which the one- to two-minute breaks assessed in the RFC address Plaintiff's limitations concentrating and managing symptoms of anxiety and difficulty concentrating. (*See generally* Dkt. 8-1). Dr. Farmer's assessment of Plaintiff's limitation supports the limitation set forth in the RFC, and remand is not warranted on this basis.

### B. The ALJ's Assessment of Plaintiff's Ability to Handle Stress is Supported by Substantial Evidence

Finally, Plaintiff argues that the ALJ's finding that Plaintiff should be limited to "low-stress jobs" is not a sufficiently individualized assessment of the nature of Plaintiff's stress and its triggers. (Dkt. 8-1 at 18-20 (quoting Dkt. 6 at 21)). Defendant contends that the assessed RFC properly accounts for Plaintiff's ability to handle stress. (Dkt. 9-1 at 16). The Court finds that the ALJ gave a detailed account of Plaintiff's stress, specific situational stressors, and ability to manage such stressors. Accordingly, remand is not warranted.

As previously discussed, the ALJ credited Plaintiff's testimony that group interactions caused him feelings of paranoia, his ability to interact with others was "awful[,]" and he sought to avoid such situations. (*See* Dkt. 6 at 56). In so doing, the ALJ afforded Plaintiff more severe limitations in his ability to interact with the public than Dr. Farmer's opinion may have suggested. The ALJ also addressed the extent to which Plaintiff's anxiety symptoms affected Plaintiff's ability to concentrate on a given task, as set forth Dr. Farmer's opinion, and the ALJ assessed a limitation of one- to two-minute breaks to accommodate Plaintiff's challenges in maintaining his focus as a result of his anxiety. (*See id.* at 20).

This instant matter is unlike *Haymond v. Colvin*, No. 1:11-CV-0631 (MAT), 2014 WL 2048172 (W.D.N.Y. May 19, 2014) and the cases cited therein relating to a plaintiff's ability to handle stress in that here, the ALJ has not simply recommended low stress work. Instead, the ALJ limited Plaintiff to "low stress jobs, defined as positions with no more than occasional changes in the work setting[,]" indicated that Plaintiff "cannot tolerate fast-

paced work environments, defined as constant activity with work tasks performed sequentially in rapid succession[,]" and limited Plaintiff to "brief and superficial contact with the public[.]"  (Dkt. 6 at 21-22).  In recognizing these specific limitations, the ALJ addressed the specific stressors evidenced in the record, their precise effects on Plaintiff's ability to concentrate at work, and the settings that are likely to exacerbate Plaintiff's stress including Plaintiff's anxiety symptoms discussed above and his limitations interacting with superiors, coworkers, and the public.  (*See id.* at 20, 24-27).  Moreover, the ALJ assessed the specific limitations including limitations on interactions with coworkers and the public and one- to two-minute breaks to accommodate Plaintiff's anxiety-related difficulty focusing.  Accordingly, this argument is without merit, and remand is not warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:     January 10, 2023
           Rochester, New York